UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KRISTI MARINO,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, [1]<br><br>    Defendant. | CASE NO. 2:16-cv-00967 BHS JRC<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: March 3, 2017 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* Dkt. 10, 14, 15).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

After considering and reviewing the record, the Court concludes that the ALJ erred when evaluating the medical opinion of examining doctor, Dr. Kakar. Although the ALJ generally found that his opinions were inconsistent with the treatment record, the ALJ failed to cite anything from the treatment record that was inconsistent with Dr. Kakar's opinion regarding plaintiff's limitations in completing workdays and full workweeks without interruptions from psychological symptoms. Instead the ALJ noted findings such as plaintiff's efforts in group therapy and care for her elderly mother, which are not inconsistent with Dr. Kakar's opinions regarding effective performance in a full time work setting.

Therefore, the Court recommends that the ALJ's written decision be reversed and this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation.

## BACKGROUND

Plaintiff, KRISTI MARINO, was born in 1961 and was 49 years old on the amended alleged date of disability onset of May 16, 2011 (*see* AR. 9, 37, 268-75). Plaintiff graduated from high school and has an accounting degree from the University of Washington (AR. 41). Plaintiff has work experience in accounting and her last employment was as a senior accountant (AR. 41). This job ended when she started missing days of work and the quality of her work was going down allegedly due to pain and medication side effects (*id.*).

According to the ALJ, plaintiff has at least the severe impairments of "postsurgical hypothyroidism; fibromyalgia; degenerative joint disease of the right knee; degenerative

joint disease of the left hip; mild retrolisthesis of the lumbar spine with nonspecific osteoarthritic changes; moderate left neural foraminal stenosis of the cervical spine; obesity; obsessive compulsive disorder; generalized anxiety disorder; and depression (20 CFR 404.1520(c))" (AR. 11).

At the time of the hearing, plaintiff was living with her mother and brother (AR. 40).

PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 70-82, 83-95, 137-41, 142-49). Plaintiff's requested hearings were held before Administrative Law Judge Stephanie Martz ("the ALJ") on March 20, 2014 (*see* AR. 26-33) and December 2, 2014 (*see* AR. 34-67). On January 16, 2015, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 6-25).

On May 3, 2016, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (AR. 1-4). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in June, 2016 (*see* Dkt. 3). Defendant filed the sealed administrative record regarding this matter ("AR.") on September 13, 2016 (*see* Dkt. 8).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ failed to provide legally sufficient reasons for disregarding or limiting the weight of plaintiff's treating and examining physicians' opinions and other sources; (2) Whether the ALJ improperly discredited plaintiff's testimony, resulting in a flawed residual functional capacity finding and whether the ALJ erred by failing to find plaintiff's neuropathy to be a severe impairment; (3) Whether the ALJ failed to explain how conflicts between the vocational expert's testimony and facts outlined in the Dictionary of Occupational Titles ("DOT") were resolved as required under SSR 00-4p; and (4) Whether this case should be reversed and remanded for a payment of benefits or remanded for further administrative proceedings (*see* Dkt. 10, pp. 1-2).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) **Whether the ALJ failed to provide legally sufficient reasons for disregarding or limiting the weight of plaintiff's treating and examining physicians' opinions and other sources.**

Plaintiff contends that the ALJ erred when evaluating the medical evidence. Defendant contends that there is no harmful error.

When an opinion from an examining or treating doctor is contradicted by other medical opinions, the treating or examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

Dr. Sunil K. Kakar, Psy.D. evaluated plaintiff on December 11, 2012 (*see* AR. 445-452). As noted by the ALJ, Dr. Kakar "opined that the claimant had moderate to marked limitations" (AR. 18). However, the ALJ failed to differentiate between the opinions of moderate limitations and the opinions of marked limitations. "Moderate" limitations "means there are significant limits on the ability to perform one or more basic work activity," while "Marked" limitations "means a very significant limitation on the ability to perform one or more basic work activity" (AR. 448). The difference can be the difference between being disabled and not being disabled. So it is important.

Although the ALJ gave "little weight to Dr. Kakar's opinion as it is inconsistent with the claimant's [] mental health treatment records," the ALJ failed to specify whether she found that the treatment records are inconsistent with Dr. Kakar's opinions regarding moderate limitations, his opinions regarding marked limitations, or both (*id.*). Similarly, although the ALJ notes a few findings from plaintiff's treatment records, the ALJ does

not specify which opinion of Dr. Kakar is inconsistent with these findings. Although Dr. Kakar opined that plaintiff suffered from various areas of moderate limitation, he only opined that there were two areas in which plaintiff suffered from marked limitations (*see* AR. 448). Dr. Kakar opined that plaintiff suffered from marked limitation in her ability to communicate and perform effectively in a work setting, and in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms (*see id.*). Defendant has not cited, and the Court has not found, support for the ALJ's conclusion that there are inconsistent mental health treatment records. Therefore, the Court concludes that substantial evidence in the record as a whole does not support any (presumed) finding by the ALJ that these specific opinions regarding marked limitations are inconsistent with plaintiff's mental health treatment record.

The ALJ noted that plaintiff's mental status examinations ("MSEs") have shown that plaintiff had a linear thought process, with logical and appropriate thoughts; and unremarkable speech (*id.*). These findings do not demonstrate that plaintiff could perform effectively in a work setting, nor are they inconsistent with a very significant limitation on her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. Although plaintiff's mental health treatment record demonstrates that plaintiff responded well to treatment through medication and group therapy, even when she was reporting improvement, she still was reporting that she continued "to struggle with days of depression and anxiety" (AR. 583). In addition, in the treatment notes cited by the ALJ in support of her finding of an inconsistency, the treating physician opined that plaintiff was suffering from moderate to severe depression

and obsessive compulsive disorder ("OCD"), and that plaintiff's depression and OCD symptoms were "treatment resistant" (*see* AR. 584). Therefore, although plaintiff may have been responding to treatment, the persistence of moderate to severe depression and OCD symptoms that were "treatment resistant" demonstrates that these treatment records are not inconsistent with Dr. Kakar's opinions that plaintiff suffered from marked limitations in her ability to perform effectively in a work setting and complete a normal workday and workweek without interruptions from psychologically-based symptoms.

Similarly, the ALJ notes that plaintiff was "described as an 'outstanding' member of her Depression/Anxiety Group ["DAG"]" (AR. 18). However, despite actively participating in her group therapy and receiving positive notes from the social worker on the date of her last group therapy session, May 10, 2013, for integrating the lessons she learned there (*see* AR. 587), her treating physician on July 15, 2013 nevertheless assessed that plaintiff was experiencing an overall "positive, but slow, response to treatment with quick declines when faced with stressful situations" (AR. 591). Therefore, the treatment records relied on by the ALJ demonstrate that plaintiff was responding slowly to treatment and was suffering from "quick declines," which is entirely consistent with Dr. Kakar's opinions that plaintiff suffered from marked limitations in her ability to perform effectively in a work setting and complete a normal workday and workweek without interruptions from psychologically-based symptoms.

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ's finding that the treatment records cited are inconsistent with the opinions of Dr. Kakar is not supported by substantial evidence in the record as a whole.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 7

Next, the ALJ found that plaintiff's "activities are also inconsistent with Dr. Kakar's opinion" (AR. 18). However, this finding, too, is not supported by substantial evidence in the record as a whole.

The ALJ noted that plaintiff was taking care of her elderly mother, however that fact does not demonstrate that plaintiff could perform effectively in a work setting, and is not inconsistent with an opinion that she suffered from marked limitation in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. As noted by the Ninth Circuit, "many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen v. Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir. 1996) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication")). The ALJ did not find that plaintiff's care for her elderly mother was transferable to a work setting and made no findings regarding whether plaintiff spent a substantial part of her day engaged in the care of her elderly mother. Without further development of this issue, the fact that plaintiff cared for her elderly mother does not demonstrate an inconsistency with Dr. Kakar's opinions regarding plaintiff's ability to perform effectively in a full-time work setting without interruptions from psychologically-based symptoms.

Similarly, the ALJ noted that plaintiff was volunteering for up to eight hours a day (*see* AR. 18 (citing AR. 626)). However, the ALJ made no findings regarding how often plaintiff engaged in this volunteer work. Although the ALJ appears to imply that plaintiff

was working up to eight hours a day, five days a week, one treatment note indicates that plaintiff was engaged in this volunteer work for only three days a week (*see* AR. 589). Similarly, elsewhere in her written decision, the ALJ concludes that this volunteer work "contradicts the claimant's testimony that she was volunteering only half time . . . .", but, the ALJ has not cited any evidence that plaintiff was engaged in volunteer work more than half time (AR. 17). The ALJ appears to have relied on an unsubstantiated speculation that plaintiff was working full time at her volunteer work. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22 (an ALJ may not speculate). Furthermore, the ALJ did not delineate plaintiff's responsibilities or activities regarding this volunteer work and did not discuss to what extent it is transferable to a work setting. Volunteer work, like home activities, "may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen*, 80 F.3d at 1287 n.7 (citing *Fair*, 885 F.2d at 603). Similarly, it is possible, if not likely, that plaintiff had more flexibility in scheduling her apparent part time volunteer work then she would have scheduling full-time employment. *See id.*; *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical difference between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer). Therefore, based on the record and the elucidation provided by the ALJ in her written decision, the Court concludes that the fact that plaintiff engaged in volunteer work for up to eight hours a day apparently on a part

time basis is not inconsistent with Dr. Kakar's opinions regarding plaintiff's ability to perform effectively in a full-time work setting.

Finally, the Court concludes that the ALJ's error in the evaluation of Dr. Kakar's opinion is not harmless error.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently, the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout,* 454 F.3d at 1055-56). In *Marsh*, even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)). It is for the ALJ in the first instance to develop the record regarding the demands of plaintiff's volunteer work and care for her elderly mother, and to determine the relevance of such to plaintiff's ability to engage in competitive work in a full time employment setting. *See id.*

The opinions provided by Dr. Kakar include the opinions that plaintiff suffered from marked limitations in her ability to communicate and perform effectively in a work setting and in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms (AR. 448). As noted, "Marked" means limitations that reflect "a very significant limitation on the ability to perform one or more basic work activity" (*id.*). Fully crediting these opinions regarding "very significant limitation" in these areas very likely could lead to a different ultimate disability determination. Therefore, the Court cannot conclude with confidence "that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh*, 792 F.3d at 1173 (citing *Stout,* 454 F.3d at 1055-56). As a result, this matter should be reversed and remanded for further consideration by the Administration, as requested by plaintiff in her amended request for relief (*see* Reply Brief, Dkt. 15, p. 7).

**(2)   Whether or not the ALJ improperly discredited plaintiff's testimony, resulting in a flawed residual functional capacity finding and whether plaintiff's neuropathy is a severe impairment.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, the evaluation of a claimant's statements regarding limitations relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 SSR LEXIS 4. Therefore, plaintiff's testimony and

statements should be assessed anew following remand of this matter. Similarly, the ALJ should consider anew whether plaintiff's neuropathy is a severe impairment.

**(3)   Whether or not the ALJ failed to explain how conflicts between the vocational expert's testimony and facts outlined in the Dictionary of Occupational Titles were resolved as required under SSR 00-4p.**

Because this matter should be reversed and remanded for further administrative consideration, the final steps in the sequential disability evaluation process should be completed anew following remand of this matter.

## CONCLUSION

The ALJ failed to provide specific and legitimate rationale based on substantial evidence in the record as a whole for her failure to credit fully the medical opinions of examining psychological doctor, Dr. Kakar.

Therefore, for this reason, and based on the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation. **JUDGMENT** should be for **plaintiff** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can

1   result in a result in a waiver of those objections for purposes of appeal. *See Thomas v.*

2   *Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012)

3   (citations omitted). Accommodating the time limit imposed by Rule 72(b), the clerk is

4   directed to set the matter for consideration on March 3**,** 2017, as noted in the caption.

5       Dated this 10th day of February, 2017.

                                                J. Richard Creatura
                                                United States Magistrate Judge